IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>SONIA M. ACEVEDO MARRERO<br><br>Debtor | CASE NO. 10-11522 BKT<br><br>Chapter 11 |

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**

**TO THE HONORABLE COURT:**

COME NOW MARGARITA ROSADO MUÑOZ, GABRIEL ROSADO MUÑOZ and DAVID ROSADO NUÑEZ through the undersigned attorneys and very respectfully STATE and PRAY:

I. INTRODUCTION

This case was filed in bad faith. There is no *bona fide* bankruptcy purpose to be achieved. It was filed in the eve of the execution of a court order which debtor had tried to evade through many unsuccessful legal maneuvers.

The bankruptcy petition was filed for the sole purpose of staying a 2-party dispute for the determination of ownership rights in an inheritance, governed by the PR Intellectual Property Act. Such action was not that of a creditor collecting a debt against the above captioned debtor. Upon information and belief, there is no creditor suing debtor, or even threatening to sue debtor on an outstanding obligation. In fact, the petition lists virtually no creditor other than debtor's attorneys

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**  *Page 2*
*Case No. 10-11522 BKT*

in the state court action, debtor's son and a close friend.[1]

As discussed below, this case is a blatant attempt at forum shopping to evade court orders through an improvidently obtained automatic stay. This is also an impermissible attempt to transfer a 2-party dispute governed by the PR intellectual property law (with no classic debtor/creditor relationship) to this forum. In short, this is a classic example of a bad faith petition, filed for improper motives, which should be dismissed as an abuse of the bankruptcy remedy.

II. FACTUAL AND PROCEDURAL BACKGROUND

1. Julio Rosado Del Valle (1922-2008) was one of Puerto Rico's most renowned painters and sculptor. Throughout his prolific life as a painter from the decade of the 1940's to the end of his days, he developed a lifework of art masterpieces widely recognized and admired in Puerto Rico, USA and Spain. (Exhibit 1, Profile of Master Rosado)

2. In his old age (approximately 80 years old) master Rosado married debtor Sonia Acevedo Marrero, many years his junior. Before marrying debtor, master Rosado had various previous wives.

3. On September 20, 2008 master Rosado passed away leaving as his sole heirs a son and a daughter - Gabriel and Margarita Rosado Muñoz (from his former wife Muna Muñoz-Lee) and another son, David Rosado Nuñez (from his former wife Alma Nuñez).

4. These three heirs are the appearing parties in interest.

5. At the time of the filing of the bankruptcy petition, the appearing parties and debtor had

---

[1] The only apparent bona fide creditors in the list are: $144.30 owed to CRIM, $856 owed to a BMA, Bayamón, and a Banco Popular credit card debt. Hardly a creditor body for a Chapter 11 case which has already entailed a $1,039 filing fee and a $3,000 retainer for bankruptcy counsel.

**MOTION TO DISMISS FOR LACK OF GOOD FAITH** *Page 3*
*Case No. 10-11522 BKT*

---

been involved for 2 years in a hotly contested litigation involving the lifework of master Rosado. See the Complaint, Exhibit 2.

6. Debtor was defendant in said litigation – a case in which she was repeatedly ordered to comply with numerous discovery, disclosure and turn over orders. For close to two years, she was able to cause delay in the case, and not comply with several orders. She managed to evade discovery and surrender property to a custodian through numerous merit less appeals and/or other writs for review in the Puerto Rico court system, until both her legal maneuvers, and the state court's patience were exhausted.

7. When she was finally "at the end of the rope" with an order to surrender possession[2] of the works of art to court-appointed custodian, Dr. Teresa Tió, Debtor Acevedo filed the above captioned petition.

8. Debtor Acevedo filed the petition to evade complying with said order. This Chapter 11 is merely a last ditch, desperate effort to avoid compliance with court orders, an impermissible attempt at forum shopping, and an equally impermissible ploy to transfer a 2-party dispute from the state court to the bankruptcy arena. There are no creditor/debtor issues (or parties) present in this case. In fact, the filing papers show the existence of virtually no creditors (see discussion below), and absolutely no income (see Form 22B– Chapter 11 Statement of Monthly Income, Docket No. 1, at pages 12-13).

9. The state court action was filed in order to liquidate debtor's interest (widow's usufruct) in movants' inheritance; the liquidation of her interest in the formerly community property held with

---

[2] As more fully explained below, the pressing issues at the time were, and still are, the safeguarding of the artwork, and insuring its preservation, while the ownership issues are ruled upon.

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**  *Page 4*
Case No. 10-11522 BKT

---

master Rosado, and to effect the division of the decedent's estate among its rightful heirs.

10. As part of the preliminary matters brought in the litigation was the safeguarding and preservation of the artwork.

11. The state court approved, as a provisional and cautionary measure, that the artwork and other professional tools and materials be transferred and kept under the care of a court-appointed custodian, Dr. Teresa Tió, in premises carefully and adequately prepared for such safekeeping. Dr. Tió is a former executive director of the PR Institute of Culture, one of Puerto Rico's most distinguished intellectuals, and a tenured academic teaching at the University of Puerto Rico.

12. The safekeeping premises are located within the Jardín Botánico of the University of Puerto Rico. The custodian and the premises were decided upon after the court carefully evaluated all the pertinent facts. Thereupon, the state court entered[3] the following findings of fact:

¶4  Dr. Teresa Tió Fernández was designated as custodian for the works of art

¶5  Dr. Tió has the experience of having worked with various art expositions by renowned artists, and has had direct contact with their works. In none of those art showings have any of the pieces under her custody suffered any harm or impairment.

¶6  Entry to the Jardín Botánico premises is guarded by a steel gate; once inside said first gate, the visitor must identify himself with a guard.

¶7  The Jardín Botánico has 24-hour security and controlled access.

¶8  The shop [where the artwork is located] has four security cameras, recording the entry and the exit of persons ... once inside, two cameras are constantly recording whatever takes place therein. The cameras are running constantly ("las 24 horas").

¶9  It has storm-proof windows with locks that remain constantly locked. The windows are sealed to prevent light from entering that may directly affect the

---

[3] See Exhibit 3, Order of 8 November 2010 at pp 3-6. (Our translation.)

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**      *Page 5*
*Case No. 10-11522 BKT*

    artwork.

¶10      Air conditioning is running around the clock.

¶11      The shop is equipped with a motion-detection alarm system ... which also monitors the doors. Dr. Tió controls the activation and deactivation of the alarm system.

¶12      If the alarm goes off, Dr. Tió is immediately contacted by the security guards so that she can come to the site.

¶13      The shop has a system that controls the temperature and humidity so that the artwork is in the best condition possible.

¶14      The art is kept in special drawers, and each piece is protected by glassine wrapping.

¶15      Most of the pieces have already been examined, registered, photographed and adequately wrapped.

¶16      Dr. Tió is the only person with keys to the shop.

¶17      Any person gaining access to the shop, technicians, pest control person, or janitorial personnel, must be accompanied by Dr. Tió – who remains in the shop while any such person completes their tasks.

¶18      The only occasions in which [the custodian] is not present, the shop is manned by her assistants performing tasks directly on the artwork.

13.    The staff under Dr. Tió's supervision, who has access to the shop, has been hand-picked by her, and are all qualified professionals for their respective tasks. See these and additional findings of facts in Exhibit 3, at pages 3-6.

14.    As stated above, the court was – and still is – deeply concerned with the protection of the works of art, and so are the appearing parties.

15.    The appearing parties are the rightful owners of said property.[4]

---

    [4]    Except for a few pieces which are conceded as owned by debtor Sonia Acevedo, which are not at issue, master Rosado's works were his separate property ("bienes privativos"), and as

**MOTION TO DISMISS FOR LACK OF GOOD FAITH** *Page 6*
Case No. 10-11522 BKT

16. After a long process comprised of numerous orders which debtor failed to obey, or manage to frustrate through several unsuccessful writs for review, on December 9, 2010 the state action plaintiffs, the court-appointed custodian, and a court marshall went to debtor's residence to execute the final turnover order whereby the balance of the artwork was to be delivered to the custodian.

17. In spite of the firm forewarning by the court to debtor Acevedo regarding strict compliance with this order, when the parties reached the property, the same was closed, unprotected, with no one inside.

18. The court marshall called the judge and received instructions to contact debtor Acevedo's attorneys.

19. After many unsuccessful efforts to get the attorneys of record on the line, the court marshall was able to get attorney Vionette Benitez on the phone. Attorney Benitez responded that she was under no obligation to speak with the parties because debtor Acevedo had filed a bankruptcy case.

20. The bankruptcy petition was filed on December 8, **the day before** the order's December 9 return date. Yet, no notice was given to the appearing parties or to the state court.

21. Not only was such lack of notice a gross want of professional courtesy, but – more importantly – it is a further showing of debtor's bad faith and contempt.

22. The state court action is the proper forum to determine the issues before it. These issues are to be decided under Puerto Rico family law, Puerto Rico inheritance law, and Puerto Rico

---

such, were inherited by his 3 appearing children. Debtor's interest therein is limited to the usufruct ("cuota viudal usufructuaria") which the state court has been asked to quantify and liquidate.

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**  *Page 7*
Case No. 10-11522 BKT

Intellectual Property Act (31 LPRA 1401, *et seq*). (See Exhibit 4, Order of 12/22/2010)

23. After many hearings, considering numerous motions and memoranda, and an exhaustive study of the applicable law, the state court was in the process of determining the specific rights or ownership over the inheritance, and its eventual division among the heirs.

24. This case, on the other hand, does not present a bona fide bankruptcy matter. In fact, conspicuously absent in this case is a body of creditors.

25. The list of "creditors" provided by debtor with its petition (Docket No. 1, at page 5) contains the following:

|  | Name of alleged creditor | Amount | Comments by appearing parties |
| --- | --- | --- | --- |
| 1 | Miniwarehouse Corporation | $89,000,000 | This is **not** a debt. Quite the opposite. It is a claim against Miniwarehouse and its insurers for losses suffered in a fire. Debtor is one of several plaintiffs, together with the appearing parties in interest. See Exhibit 2 at pgs. 2-3 |
| 2<br>3<br>4 | Appearing parties in interest | $29,000,000<br>$29,000,000<br>$29,000,000 | See above. The same claim is being divided among the 3 appearing parties in interest. Again, **not** a debt, but a claim. |
| 5 | Muñoz Boneta Benitez Perals Brugueras | $169,622.83 | Debtor's attorneys in the state court action. |
| 6 | Hilger J. Hertell | $12,000 | Debtor's son |
| 7 | Banco Popular | $6,265.34 |  |
| 8 | Patricia Stubbe | $5,000 | Debtor's close friend and neighbor. |
| 9 | BMA Bayamon 1232 | $856.93 |  |
| 10 | CRIM | $144.30 |  |

**MOTION TO DISMISS FOR LACK OF GOOD FAITH** *Page 8*
*Case No. 10-11522 BKT*

26. As stated above, the only apparent bona fide creditors in the list are: $144.30 owed to CRIM, $856 owed to a BMA, Bayamón, and a Banco Popular credit card debt. Hardly a creditor body for a Chapter 11 case which has already entailed a $1,039 filing fee and a $3,000 retainer for bankruptcy counsel.

27. In view of the dire need to preserve and protect the works of art from possible and irreparable loss, the appearing parties are moving through a separate motion for a modification of the automatic stay to allow the state court, *inter alia*, to proceed with the provisional remedies which were abruptly interrupted by the filing of this case, while this motion to dismiss is adjudicated.

III. DISCUSSION

The appearing party respectfully moves for dismissal under Section 1112(b) of the Bankruptcy Code. Under said section, dismissal is proper upon showing of cause. Examples of cause are listed therein. The list in §1112(b) is not exhaustive. For many years there has been abundant case law stating that lack of good faith (evident in this case) is cause for dismissal. In re Grieshop, 63 BR 657 (BC Ind. 1986) Collier treatise sheds light on this doctrine, and comments these cases as follows:

> In addition to granting relief for one of the reasons enumerated in section 1112(b), the court may also dismiss a chapter 11 case for lack of good faith. No provision of the Code expressly authorizes a court to dismiss a case on this ground. Nevertheless, even in the absence of express statutory authorization, the requirement of good faith has been held to be an implicit condition to the filing and maintenance of a bankruptcy case for over a century. As the Court of Appeals for the Fifth Circuit explained: "Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." Note 1
>
> Footnote 1. Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F. 2d 1068, 1071 (5th Cir. 1986) ; see also Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture), 936 F.2d 814, 816-17 (5th Cir. 1991) (following Little Creek); Carolin Corp. v. Miller, 886 F.2d 693, 698 (4th Cir. 1989) (finding implicit requirement of good faith under the

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**  *Page 9*
Case No. 10-11522 BKT

---

      Code); In re Winshall Settlor's Trust, 758 F.2d 1136, 1137, 12 C.B.C.2d 605 (6th Cir. 1985) ; Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984) ; Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co., Inc.), 212 B.R. 793, 801 (D.N.J. 1997) ; In re First Assured Warranty Corp., 383 B.R. 502, 544 (Bankr. D. Colo. 2008) ; In re Victory Constr. Co., Inc. 9 B.R. 549, 551-57, 558 (Bankr. C.D. Cal. 1981) (chronicling the history and development of the good faith doctrine under the Bankruptcy Act of 1898, and concluding, "It would be more than anomalous to conclude that in consolidating the provisions of Chapter X, XI, and XII in Chapter 11 of the Code, Congress intended to do away with a safeguard against abuse and misuse of process which had been established and accepted as part of bankruptcy philosophy (either by statute or decisional law) for almost a century.").

In contrast to testing the debtor's prospects of reorganization, the good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity and is designed to prevent "abuse of the bankruptcy process, or the rights of others, involv[ing] conduct or situations only peripherally related to the economic interplay between the debtor and the creditor community." Note 6

    Footnote 6.    In re Victory Constr. Co., Inc., 9 B.R. 549, 559 (Bankr. C.D. Cal. 1981) ; see also Furness v. Lilienfield, 35 B.R. 1006, 1011-12 (D. Md. 1983) ; In re Hammersmith Trust, LLC, 243 B.R. 795, 800 (Bankr. M.D. Fla. 1999) ("the Petition must be filed with honest intent and genuine desire to utilize the provisions of the Code to reorganize and not merely as a device to serve some sinister or unworthy purpose and the courts should not and cannot tolerate such misuse of the reorganization process").

7-1112 Collier on Bankruptcy P 1112.07
P 1112.07 Dismissal for Lack of Good Faith

    In its review of the pertinent cases, Collier classifies the following specific situations giving rise to dismissal for lack of good faith – all of which pertinent to the case at bar: (A) use of the bankruptcy process to escape obligations[5]; (B) the secretion of property and other efforts to avoid

---

   [5] Gonzalez Hernandez v. Borgos, 343 F.2d 802, 805-07 (1st Cir. 1965)

**MOTION TO DISMISS FOR LACK OF GOOD FAITH** *Page 10*
*Case No. 10-11522 BKT*

the disclosure of assets[6]; (C) use of the bankruptcy system simply to avoid the consequences of prior misconduct[7]; (D) the filing of a case to avoid an obligation under circumstances in which the debtor is not in need of reorganization – **including two-party disputes, as the one at bar**[8]; (E) the absence of legitimate debt[9]; (F) use of bankruptcy as a vehicle to resolve disputes solely between equity participants[10]

---

[6] In re Wisun & Golub, Inc., 84 F.2d 1, 2 (2d Cir. 1936) ; In re Boughton, 243 B.R. 830, 834-36 (Bankr. M.D. Fla. 2000) .

[7] Dvinsky v. Cook, (In re Cook), 104 F.2d 981, 985 (7th Cir. 1939) ("[I]t appears plainly that the instant proceeding was instituted not for the purpose of obtaining benefits afforded by the [former Bankruptcy] Act to a corporation in financial distress, but to enable appellees to escape the jurisdiction of another court where the day of reckoning of their alleged acts of misconduct was at hand."); Furness v. Lilienfield, 35 B.R. 1006, 1013 (D. Md. 1983) (bankruptcy case dismissed for lack of good faith where debtor filed petition solely to delay litigation).

[8] In re SGL Carbon Corp., 200 F.3d 154, 162-64 (3d Cir. 1999) (filing found to be a litigation tactic); Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828-29 (9th Cir. 1994) (where debtor had sufficient assets to satisfy judgment, it was improper for debtor to file chapter 11 petition simply to delay collection of judgment and avoid posting appeal bond); Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.), 709 F.2d 762, 764-65 (1st Cir. 1983) ; Tucker v. Texas Am. Syndicate, 170 F.2d 939, 940 (5th Cir. 1948) ; Dunes Hotel Associates v. Hyatt Corp., 245 B.R. 492, 511-12 (D.S.C. 2000) (dismissal warranted on grounds of bad faith where solvent debtor was found to have filed case simply as a litigation tactic to avoid the obligations of an unfavorable lease); Y.J. Sons & Co., Inc. v. Anemone, Inc. (In re Y.J. Sons & Co., Inc.), 212 B.R. 793, 803-04 (D.N.J. 1997) (dismissal warranted where debtor filed simply to obtain better terms for sale of asset); Argus Group 1700 v. Steinman, 206 B.R. 757, 763 (E.D. Pa. 1997) (dismissal warranted where debtor was solvent and simply sought a better forum for ongoing litigation); In re Southwest Enters., Inc., 261 F. Supp. 721, 724-26 (W.D. Ark. 1966) ; Mushkogee Environmental Conservation Co. v. Scriminger (In re Muskogee Environmental Conservation Co.), 236 B.R. 57, 66-69 (Bankr. N.D. Okla. 1999) (court dismissed case involving solvent debtor embroiled in two-party dispute).

[9] Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.), 709 F.2d 762, 764 (1st Cir. 1983) ("[A] person in bankruptcy ... must at least owe debts.").

[10] Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.), 709 F.2d 762, 765 (1st Cir. 1983) (dispute between parties with competing ownership claims to the same asset); Caruso Enters., Inc. v. U.S.A. Motel Corp. (In re U.S.A. Motel Corp.), 450 F.2d 499, 504-06 (9th Cir. 1971) ; Dubladenhill, Inc. v. Sharretts, 375 F.2d 558, 560 (4th Cir. 1967) ; Smith v.

Finally, Collier concludes:

> In situations like these, although the debtor or some other party might in many instances otherwise proceed to formulate a plan of reorganization, continuing the process is thought to constitute a perversion of the reorganization laws and the court may terminate the proceedings to prevent the abuse. [Note 23, omitted]
>
> Where the debtor was financially healthy and expected to continue normal business operations and had no overdue debts at the time it filed its chapter 11 petition, the court found that the filing was in bad faith because the filing was a litigation tactic designed to frustrate prosecution of antitrust claims. [Note 66, omitted] Even where the debtor is currently suffering substantial losses, if the debtor does not have a present need for chapter 11 relief but instead files to discharge litigation claims and minimize claims for future rent notwithstanding that it holds sufficient cash to meet its obligations, the filing may be found in bad faith, "because the lawsuits did not pose a sufficient present threat to justify bankruptcy relief." [Note 67, omitted]

## IV. CONCLUSION

This case was filed in bad faith. There is no *bona fide* bankruptcy purpose to be achieved. It was filed in the eve of the execution of a court order which debtor had tried to evade through many unsuccessful legal maneuvers. The bankruptcy petition was filed for the sole purpose of staying a 2-party dispute for the determination of ownership rights in an inheritance. As discussed above, this case is a blatant attempt at forum shopping to evade court orders through an improvidently obtained automatic stay. The petition, filed for improper motives, should be dismissed as an abuse of the bankruptcy remedy.

**WHEREFORE**, it is respectfully requested that the above captioned bankruptcy case be dismissed, with such other remedy the court finds appropriate.

In San Juan, Puerto Rico, this 15th day of December, 2010.

Within 30 days after service as evidenced by the certificate of service of this motion, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against

---

Piccadilly Realty Co. (In re Piccadilly Realty Co.), 78 F.2d 257, 261 (7th Cir. 1935) .

**MOTION TO DISMISS FOR LACK OF GOOD FAITH**     *Page 12*
*Case No. 10-11522 BKT*

whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (I) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

    **I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system.

EDGARDO MUÑOZ, PSC
*Attorney for parties-in-interest* MARGARITA ROSADO MUÑOZ, GABRIEL ROSADO MUÑOZ and DAVID ROSADO NUÑEZ

PO Box 360971
San Juan, PR 00936-0971
Tel. (787) 524-3888
Fax (787) 524-3888

**s/ EDGARDO MUÑOZ**
   USDC NO. 125713
emunoz@emunoz.net

**MOTION TO DISMISS FOR LACK OF GOOD FAITH** *Page 13*
*Case No. 10-11522 BKT*

LIST OF EXHIBITS:

Exhibit 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Profile of Master Rosado

Exhibit 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Complaint

Exhibit 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Order of 8 November 2010

Exhibit 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Order of 12/22/2010